BART M. DAVIS, IDAHO STATE BAR NO. 2696
UNITED STATES ATTORNEY
JUSTIN D. WHATCOTT, IDAHO STATE BAR NO. 6444
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
WASHINGTON GROUP PLAZA IV
800 EAST PARK BOULEVARD, SUITE 600
BOISE, ID 83712-7788
TELEPHONE: (208) 334-1211
FACSIMILE: (208) 334-1413

**U.S. COURTS**

**MAY 24 2018**

Rcvd_____Filed_____Time_____
STEPHEN W. KENYON
CLERK, DISTRICT OF IDAHO

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

UNITED STATES OF AMERICA,

Plaintiff,

vs.

JOSE LUIS SANCHEZ,

Defendant.

Case No.   CR 18-0177-S BLW

**RULE 11 PLEA AGREEMENT**

Rev. August 2017 (General)

I.    **GUILTY PLEA**

A.    **Summary of Terms.** Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A) and (B), the defendant, the attorney for the defendant, and the government[1] agree that the defendant will plead guilty to count one of the Information, which charges the defendant with Access with Intent to View Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), (b)(2). The defendant will also admit the asset forfeiture allegation in the Information.

This plea is voluntary and did not result from force, threats, or promises, other than any promise made in this agreement. Upon acceptance of the defendant's guilty plea, and the defendant's full compliance with the other terms of this agreement, the government agrees, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A), that it will not file additional charges for conduct arising from the Idaho Internet Crimes Against Children Task Force investigation of the defendant that underlies this case, and, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), agrees to recommend a sentence at the low end of the guideline range.

B.    **Oath.** The defendant will be placed under oath at the plea hearing. The government may use any statement that the defendant makes under oath against the defendant in a prosecution for perjury or false statement.

C.    **Waiver of Indictment.** Pursuant to Federal Rule of Criminal Procedure 7(b), the Defendant agrees to waive his right to prosecution by indictment, and enter a guilty plea to the information, as detailed herein. The waiver of indictment shall be filed with the Court at the time of the initial appearance and change of plea hearing.

II.    **WAIVER OF CONSTITUTIONAL RIGHTS AT TRIAL**

---

[1] The word "Government" in this Agreement refers to the United States Attorney for the District of Idaho.

**Plea Agreement**                    1

The defendant waives the following rights by pleading guilty pursuant to this agreement: 1) the right to plead not guilty to the offense(s) charged against the defendant and to persist in that plea; 2) the right to a trial by jury, at which the defendant would be presumed innocent and the burden would be on the government to prove the defendant's guilt beyond a reasonable doubt; 3) the right to have the jury agree unanimously that the defendant was guilty of the offense; 4) the right, at trial, to confront and cross-examine adverse witnesses; 5) the right to present evidence and to compel the attendance of witnesses; and 6) the right not to testify or present evidence without having that held against the defendant. If the court accepts the defendant's guilty plea, there will be no trial.

## III.   NATURE OF THE CHARGES

A.   **Elements of the Crime.** The elements of the crime of Access with Intent to View Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), (b)(2), as charged in count one of the Information, are as follows:

1.   The Defendant knowingly accessed with intent to view any matter that contained an image of child pornography, as defined in Title 18 United States Code Section 2256(8)(A); and

2.   That such child pornography had been transported in interstate or foreign commerce by any means, including by computer, or that such child pornography had been produced using materials that had been mailed or shipped or transported in interstate or foreign commerce by any means, including by computer; and

3.   The Defendant knew that such items constituted child pornography.

"Child Pornography" is defined in 18 U.S.C. § 2256(8)(A) as "any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit

Plea Agreement                                   2                        Rev. August 2017 (General)

conduct, where the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct.

"Sexually Explicit Conduct" is defined in 18 U.S.C. § 2256(2)(A) as "actual or simulated (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the genitals or pubic area of any person."

B.      **Factual Basis.** If this matter were to proceed to trial, the government and the defendant agree that the following facts would be proven beyond a reasonable doubt:

Starting in October of 2015, Agents with Homeland Security Investigations (HSI) began monitoring an online video conferencing application that was being used to view and exchange images of child pornography (hereinafter "application A"). Application A permitted users to sign into a chatroom using an anonymous username. Once in the chatroom, users could post, share, and view live videos, recorded videos, and still images with other users of the chatroom. HSI agents, acting in an undercover capacity, observed a particular chatroom (hereinafter "chatroom A") that was primarily used for posting and viewing images of child pornography. On sixteen different dates between November 10, 2015 and January 15, 2016, an undercover HSI agent observed users posting, viewing, and commenting on, images of child pornography in chatroom A, for hours at a time.

Agents served administrative subpoenas on the application A to identify users frequenting chatroom A by identifying the internet protocol (IP) addresses the users logged in from. Agents then served subpoenas to the internet providers to determine the subscribers to whom the IP addresses were assigned. Agents received information from application A that a user "dadof1b," logged into chatroom A from an IP address assigned to a user in Idaho on seventeen separate occasions on the following dates: November 6, 2015, November 11, 2015, December 12, 2015,

**Plea Agreement**                          3                          Rev. August 2017 (General)

and January 5, 2016. Agents received information from Centurylink showing that the three IP addresses were assigned to the defendant at his residence in Boise, Idaho on the dates and times in which "dadof1b" was logged into chatroom A.

On May 12, 2016, detectives with the Idaho Internet Crimes Against Children (ICAC) Task Force served a search warrant at the defendant's residence, and seized numerous electronic devices, including an HP Pavilion G7 laptop computer, serial number 5CD2118X3Z. The defendant was not present at the residence, but was contacted at his place of work by detectives. The defendant agreed to a voluntary interview at the ICAC office in Boise. During that interview, the defendant admitted that he used application A, and that he logged into chatroom A, using the username "dadof1b," in November and December of 2015, and January of 2016, from his HP Pavilion laptop computer at his residence.

The defendant stated that he entered chatroom A to observe the users, but also saw that images of child pornography, including images with children as young as eight years old, were being posted and viewed. The defendant denied being sexually attracted to children, and stated that his primary motivation for visiting chatroom A was to watch the adult males in the chatroom masturbate. He admitted seeing images of children that caused him to want to leave chatroom A, but that he went back to chatroom A even after seeing the images. The defendant stated that he should have left the room earlier, but admitted that he repeatedly returned to the chatroom despite knowing that the content, conversation, and depictions in the chatroom involved child pornography and sex with children.

The defendant admitted using the username "dadof1b" in chatroom A, which referenced him as being the "dad of one boy," so that the other users would show interest in him. He admitted that he knew that the individuals he was speaking with were interested in a sexual relationship with his son, or identified him as having an interest in children, because of his

Plea Agreement                                   4 ·                        Rev. August 2017 (General)

username. He also admitted that he "probably" told other chatroom A users that he was sexually active with his minor son in order to "peak their interest," but that it wasn't true. The defendant rated his sexual interest in children as a "1 or 2" out of 10, but stated "obviously I didn't get out of the damn room, so it wasn't enough to chase me away."

Agents with ICAC conducted a forensic examination of the defendant's HP Pavilion laptop computer. They discovered evidence that the computer was most recently used to access the application A on April 13, 2016. Agents also discovered the content of numerous chats with other users of application A, many of whom had usernames indicative of a sexual interest in children, including "yung pedo," "14yo boy," and "htboy11." During these chats, the defendant repeatedly stated that he had a sexual interest in children, discussed sexual acts with children, and exchanged information on specific chatrooms where sexual content involving children was available. He also described his sexual interest in his minor son to numerous other users.

Agents also discovered a search for "dad son sex" on the defendant's computer, and the installation and use of a "TOR browser" which allowed the user to search the "TOR network," which is often used to access child pornography. Agents did not discovery any images of child pornography on the computer, but did discover that the computer had a program called "CCleaner," which allows a user to permanently delete files and artifacts on the computer.

## IV.   SENTENCING FACTORS

A.   **Penalties.** The crime of Access with Intent to View Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), (b)(2), as charged in count one of the Information, is punishable by:

1.   a term of imprisonment of not more than twenty years;

2.   a term of supervised release of not less than five years and up to life;

3.   a maximum fine of $250,000, and a special assessment of $5,100.

**B.**     **Supervised Release.** The court may impose a period of supervised release. No agreement exists as to the length of supervised release.

The law permits the combined prison time and term of supervised release to exceed the maximum term of incarceration for the crime to which the defendant is pleading guilty. Violation of any condition of supervised release may result in further penalties and/or prosecution.

**C.**     **Fines and Costs.** The court may impose a fine. No agreement exists as to the amount of the fine. The court may also order the defendant to pay the costs of imprisonment, probation, and supervised release.

**D.**     **Special Assessment.** The defendant will pay the special assessment(s) before sentencing and will furnish a receipt at sentencing. Payment will be made to:

>    The United States District Court, Clerk's Office
>    Federal Building and United States Courthouse
>    550 West Fort Street, Fourth Floor
>    Boise, Idaho 83724.

**E.**     **Restitution.** In addition to any forfeiture, fine, or costs imposed, the defendant agrees to pay restitution equal to the loss caused to any victim of the charged offense pursuant to any applicable statute. The defendant agrees to pay restitution in the amount ordered by the court. The defendant agrees that all monetary penalties imposed by the court, including restitution, will be due immediately and subject to immediate enforcement by the government. The defendant agrees that any payment schedule or plan set by the court is merely a minimum schedule of payments and neither the only method, nor a limitation on the methods, available to the government to enforce the judgment, unless the court specifically states otherwise. The defendant is aware that voluntary payment of restitution prior to adjudication of guilt is a factor in considering whether the defendant has accepted responsibility under the United States sentencing guidelines ("USSG") §3E1.1.

**F.     Forfeiture.**  The defendant understands that the court will, upon acceptance of the defendant's guilty plea, enter a forfeiture order as part of the defendant's sentence.  The defendant agrees immediately to forfeit to the government:  the property set out in the forfeiture allegation of the indictment or information to which the defendant is pleading;  the property described in any filed bill of particulars;  and all property and property interests that constitute property intended for use or used to commit or to facilitate the commission of the offense, including the following:

1.     Seized Personal Property.

    a.     An HP Pavilion G7 laptop computer, serial number 5CD2118X3Z.

2.     Substitute Assets.  Pursuant to 21 U.S.C. § 853(p) and other applicable statutes, the government will seek forfeiture of substitute assets, or "any other property of the defendant" up to the value of the defendant's assets subject to forfeiture.  The government will do so when the property subject to forfeiture cannot be forfeited for one or more of the following reasons:

    a.     the property cannot be located upon the exercise of due diligence;
    b.     the property has been transferred, sold to, or deposited with a third person;
    c.     the property has been placed beyond the jurisdiction of the court;
    d.     the property has been substantially diminished in value; and/or
    e.     the property has been commingled with other property that cannot be subdivided without difficulty.

Forfeiture of substitute assets shall not constitute an alteration in the defendant's sentence.

The defendant agrees that the forfeitures herein are separate from all other penalties, including monetary ones, and are also separate from restitution.  The defendant agrees to consent to abandonment proceedings as to forfeitable property herein, and to the entry of orders of forfeiture for such property, including civil administrative forfeiture, civil judicial forfeiture, or criminal forfeiture.  Finally, the defendant agrees to waive the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2 and 43(a) regarding:  (a) notice of the forfeiture in the

charging instrument, (b) advice regarding the forfeiture at the change-of-plea hearing, (c) announcement of the forfeiture at sentencing, and (d) incorporation of the forfeiture in the judgment. If this agreement is withdrawn for any reason, the defendant waives the right to contest all civil and administrative forfeitures that began before the withdrawal.

The defendant agrees to assist fully in the forfeiture of the foregoing assets, and to take all steps necessary to pass clear title to the forfeited assets to the government. The defendant will thus, for example, execute all documents necessary to transfer such title, assist in bringing any assets located outside of the United States within the jurisdiction of the United States, take whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden or otherwise made unavailable for forfeiture, etc.

The defendant will not assist any third party in asserting a claim to the forfeited assets in an ancillary proceeding, related civil forfeiture case, or petition for remission or mitigation of forfeiture. Further, the defendant will testify truthfully in any such proceeding. The defendant agrees to waive all challenges, on any grounds, to any forfeiture carried out in accordance with this agreement.

The defendant is the sole owner of the properties and property interests listed above, except as specifically set out herein. If the defendant is not the sole owner of these properties and interests, representations are false or inaccurate, the government may pursue any and all forfeiture remedies available at law or equity based on the violations covered by this agreement.

The defendant agrees that the forfeiture provisions of this agreement will survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this Agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if defendant had survived, and that determination shall bind the defendant's heirs, successors and assigns until the agreed forfeiture is collected in full. This

includes any agreed money judgment amount. If the crime(s) involved victims, then the defendant acknowledges and agrees that this agreement to disgorge the defendant's wrongfully-obtained criminal proceeds for the benefit of the defendant's victims is remedial in nature. Therefore, the defendant intends disgorgement to be completed regardless of any possible future abatement of defendant's criminal conviction. The court shall retain jurisdiction to settle any disputes arising from application of the foregoing forfeiture provisions.

## V.   UNITED STATES SENTENCING GUIDELINES

### A.   Application of Sentencing Guidelines.

The court must consider the USSG in determining an appropriate sentence under 18 U.S.C. § 3553. The defendant agrees that the court may consider "relevant conduct" in determining a sentence pursuant to USSG § 1B1.3.

The court is not a party to this agreement. The agreement does not bind the court's determination of the USSG range. The court will identify the factors that will determine the sentencing range under the USSG. While the court may take the defendant's cooperation, if any, and the recommendations of the parties into account, the court has complete discretion to impose any lawful sentence, including the maximum sentence possible.

Recognizing that the court is not bound by this agreement, the parties agree to the recommendations and requests set forth below.

### B.   Sentencing Guidelines Recommendations and Requests.

1.   **Government's Statements at Sentencing.** The government reserves the right to fully allocute at sentencing regarding any sentencing recommendation and to rely on any information in support of its recommendation regardless of whether the information is contained in the plea agreement or the presentence report.

2.   **Acceptance of Responsibility.** If the defendant clearly accepts responsibility for the offense, the defendant will be entitled to a reduction of two levels in the

combined adjusted offense level, under USSG § 3E1.1(a). The government will move for an additional one-level reduction in the combined offense level under § 3E1.1(b) if the following conditions are met: (1) the defendant qualifies for a decrease under § 3E1.1(a); (2) the offense is level 16 or greater; and (3) the defendant has timely notified authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently. If, before sentence is imposed, the defendant fails to meet the criteria set out in USSG § 3E1.1, or acts in a manner inconsistent with acceptance of responsibility, the government will withdraw or decline to make such a recommendation.

3.    **Stipulation Regarding Sentencing Guidelines.** The defendant understands that the USSG apply in an advisory manner and are not binding on the court. The parties agree that the following sentencing guidelines sections apply to this case: USSG §§ 2G2.2(a)(1) (base offense level), (b)(2) (material involving a prepubescent minor), (b)(6) (use of a computer), and (b)(7)(A) (at least 10 images, but fewer than 150). The Government agrees that it will not argue for, or present evidence in support of, the cross-reference to USSG § 2G2.1, as detailed in § 2G2.2(c)(1), nor the enhancement for a pattern of activity involving prohibited sexual conduct in § 4B1.5(b). In exchange for the concessions made by the government, including its agreement to charge the defendant with one count alleging access with intent to view child pornography, and its agreement not to file additional charges supported by the evidence, including advertising and promoting child pornography, the Defendant agrees not to seek a downward departure or variance based upon the argument that there is a lack of empirical evidence to support the recommendations of USSG § 2G2.2.

4.      **Joint Recommendations.**  The parties jointly make the following recommendations, and agree that the following shall be included as terms of the defendant's sentence and supervised release, expressly bargained for as a part of this agreement:

a.      **Psycho-Sexual Assessment.**  The defendant will arrange and submit to a sex offender evaluation pursuant to 18 U.S.C. § 3552(b) before sentencing in this case.  The defendant must secure this evaluation from a mental health professional certified by the Idaho Sex Offender Classification Board (*see* http://somb.idaho.gov/pdf/evaluator_roster.pdf), excluding Dr. Chad Sombke.  The evaluation shall follow the format for psychosexual evaluations set forth by the Idaho Sex Offender Classification Board and the Practice Standards and Guidelines for Members of the Association for the Treatment of Sexual Abusers (ATSA).  The defendant agrees to submit to all evaluation procedures at the direction of the treatment provider, including phallometry and polygraph testing if the treatment provider deems them necessary.

b.      **Waiver of Confidentiality.**  The defendant agrees to waive any right to confidentiality and to allow the provider conducting the psychosexual evaluation (and any subsequent treatment) to supply a written report or reports to the U.S. probation office, the court, and the government.

c.      **Contact with Minors.**  The defendant may not have direct or indirect contact with minors, children under the age of eighteen, unless approved in advance, in writing, by his probation officer.

d.      **Access to Minors.**  The defendant will not reside or loiter within 300 feet of schoolyards, playgrounds, arcades or other places, establishments and areas primarily frequented by minors, unless approved in advance, in writing, by his probation officer.

e.  **Occupational Restriction.** The defendant may not engage in any paid occupation or volunteer service that exposes him either directly or indirectly to minors, unless approved in advance, in writing, by his probation officer.

f.  **Restriction on Computer/Internet Use.** The defendant may not possess or use a computer or other electronic device connected to the internet, unless approved in advance, in writing, by his probation officer.

g.  **Possession of Sexually Explicit Matter Involving Minors.** The defendant will not possess any child pornography or obscenity, or sexually explicit visual or text (written) material involving minors.

h.  **Polygraph Testing.** The defendant agrees to participate in polygraph testing to monitor his compliance with supervised release and treatment conditions, at the direction of his probation officer and/or treatment staff.

i.  **Post-Incarceration Treatment.** The defendant will successfully complete any course of treatment related to his offense, as directed by his probation officer, including but not limited to cognitive/behavioral treatment for sexual deviancy under the direction of a qualified mental health professional who is experienced in treating and managing sexual offenders, such as a member of the Association for the Treatment of Sexual Abusers (ATSA). The defendant will follow the rules of the treatment program as if they are the orders of the court.

j.  **Search Provision.** The defendant will be subject to a search of his person, home or vehicle, and any objects or materials (including computers and other types of electronic storage media) found therein, at the discretion of his probation officer.

k.  **Sex Offender Registration/Megan's Law/Adam Walsh Act Provision.** The defendant has been advised, understands and agrees that under the Sex Offender Registration and Notification Act, a federal law, the defendant must register and keep the

registration current in each of the following jurisdictions: the location of the defendant's residence, the location of the defendant's employment; and, if the defendant is a student, the location of the defendant's school. Registration will require that the defendant provide information that includes name, residence address, and the names and addresses of any places at which the defendant is or will be an employee or a student. The defendant understands that federal law requires that he must update his registrations not later than three business days after any change of name, residence, employment, or student status. *See* 42 U.S.C. § 16913(c). State laws may be more restrictive.

The defendant has been advised and understands that Idaho law requires that such registration be updated with the sheriff of the county within two working days of coming into any county to establish permanent or temporary residence, commencement of employment or enrollment as a student in an educational institution, and provides that non-residents employed in counseling, coaching, teaching, supervising or working with minors in any way, regardless of the period of employment, must register with the sheriff of the county before beginning such employment. *See* I.C. 18-8307 (4)(a)(b). The defendant understands that failure to comply with these obligations may subject him to prosecution for, among other things, failure to register under federal law, 18 U.S.C. § 2250, and failure to register under state law. It may also violate his supervised release.

5.      **Conditional Use/Derivative Use Immunity.** As a condition of court-mandated evaluation and treatment, the defendant will be required truthfully to reveal his entire sexual history, including the possibility of other sexual crimes. Because full disclosure of that history is a necessary component of effective treatment, the government agrees that the defendant's admissions during psycho-sexual evaluation and sex offender treatment, to sexual crimes (excluding homicide) previously undisclosed to any law enforcement entity, will not be

used against the defendant in a new criminal prosecution. *See United States v. Antelope*, 395 F.3d 1128 (9th Cir. 2005); *Kastigar v. United States*, 406 U.S. 441 (1972). However, the parties agree that this use immunity and derivative use immunity, is expressly conditioned, upon: 1) the defendant successfully completing sexual deviancy treatment, and 2) the defendant not materially violating the rules of supervised release, and/or committing a sexual crime or a crime involving the sexual exploitation of children after the date of this agreement. If the defendant fails to complete all aspects of treatment, or fails to comply with all material supervised release requirements, or reoffends as described above, then this use immunity provision is rescinded and the government may use defendant's statements against him.

6. **Downward Departure or Variance Request by Defendant.** Unless otherwise specified in this paragraph, the defendant will not seek a downward departure or variance under 18 U.S.C. § 3553(a), without first notifying the Government of the defendant's intent to seek a downward departure and the defendant's reasons and basis therefor, such notice to be provided not less than 21 days before the date set for sentencing.

**VI. WAIVER OF RIGHT TO DIRECT APPEAL AND TO COLLATERAL ATTACK UNDER 28 U.S.C. § 2255**

A. **Waiver:** In exchange for this agreement, and except as provided in subparagraph B, the defendant waives any right to appeal or collaterally attack the entry of plea, the conviction, the entry of judgment, and the sentence, including forfeiture and restitution.

The defendant acknowledges that this waiver shall result in the dismissal of any direct appeal or collateral attack the defendant might file seeking to challenge the plea, conviction or sentence in this case. Further, the filing of such an appeal or collateral attack will breach this agreement and will allow the government to withdraw from the agreement and take other remedial action.

Plea Agreement                                   14                          Rev. August 2017 (General)

If the defendant believes the government has not fulfilled its obligations under this agreement, the defendant will object at the time of sentencing; further objections are waived.

**B.    Exceptions:**

    1.    **Direct Appeal:** Notwithstanding subparagraph A, the defendant shall retain the right to file one direct appeal if one of the following unusual circumstances occurs:

        a.    the sentence imposed by the court exceeds the statutory maximum;

        b.    the court arrived at an advisory USSG range by applying an upward departure under chapter 5K of the USSG; or

        c.    the court exercised its discretion under 18 U.S.C. § 3553(a) to impose a sentence that exceeds the advisory USSG range as determined by the court.

The defendant understands that the above circumstances occur rarely and that in most cases this agreement completely waives all appellate rights.

    2.    **Motion Under 28 U.S.C. § 2255:** Notwithstanding subparagraph A, the defendant shall retain the right to file a 28 U.S.C. § 2255 motion alleging ineffective assistance of counsel.

**VII.    PROVIDING INFORMATION FOR THE PRESENTENCE REPORT**

The defendant agrees to provide material financial and other information requested by a representative of the United States probation office for use in preparing a presentence report. Failure to execute releases and provide information for the presentence report violates this agreement and relieves the government of its obligations in this agreement. Such failure and response by the government will not, however, constitute grounds for withdrawing the plea of guilty unless the government so requests. Providing materially false information will subject the defendant to additional penalties, including an enhancement under USSG § 3C1.1.

## VIII.   DISCLOSING FINANCIAL INFORMATION

The defendant agrees to disclose all of the defendant's assets and sources of income to the government, including all assets over which the defendant exercises or exercised direct or indirect control, or in which the defendant has had any financial interest. The defendant also agrees to cooperate in obtaining any records relating to ownership of assets when sought by the government. The defendant agrees truthfully to complete a personal financial statement within fourteen days from the date the defendant signs this agreement. If the government provides a financial statement to be completed, the defendant agrees to complete the financial statement truthfully and accurately within fourteen days from the date the defendant signs this agreement or the date the financial statement is provided to the defendant or counsel, whichever is later. The defendant agrees to provide updates with any material changes in circumstances, as described in 18 U.S.C. § 3664(k) within seven days of the event giving rise to the changed circumstances. The failure timely and accurately to complete, sign, and update the financial statements as required herein, may constitute failure to accept responsibility under USSG § 3E1.1, as well as other things.

The defendant authorizes the government: (a) to obtain a credit report on the defendant; (b) to inspect and copy all financial documents and information held by the United States probation office; and (c) to obtain financial records related to the defendant.

Before sentencing, defendant agrees not to dissipate any assets without the consent of both the government's financial litigation unit and the asset forfeiture unit. If any assets are sold, any sale proceeds received from sale of assets will be deposited with the clerk and, upon sentencing, paid toward any monetary penalties due as ordered in the judgment.

## IX.   NO RIGHT TO WITHDRAW PLEA

The defendant understands that the court may not follow the recommendations or requests made by the parties at the time of sentencing. The defendant cannot withdraw from this agreement or the guilty plea, regardless of the court's actions.

## X.   CONSEQUENCES OF VIOLATING AGREEMENT

**A.   Government's Options.** If the defendant fails to keep any promise in this agreement or commits a new crime, the government is relieved of any obligation: 1) to make a sentencing recommendation consistent with the terms promised in this agreement; and 2) not to prosecute the defendant on other charges, including charges not pursued due to this agreement. Such charges may be brought without prior notice. In addition, if the government determines after sentence is imposed that the defendant's breach of the agreement warrants further prosecution, the government may choose between letting the conviction(s) under this agreement stand or vacating such conviction(s) so that such charge(s) may be re-prosecuted. If the government determines that a breach warrants prosecution before sentencing, it may withdraw from the agreement in its entirety.

The government's election to pursue any of the above options cannot be a basis for the defendant to withdraw the guilty plea(s) made pursuant to this agreement.

**B.   Defendant's Waiver of Rights.** If the defendant fails to keep any promise made in this agreement, the defendant gives up the right not to be placed twice in jeopardy for the offense(s) to which the defendant entered a plea of guilty or which were dismissed under this agreement. In addition, for any charge that is brought as a result of the defendant's failure to keep this agreement, the defendant gives up: (1) any right under the Constitution and laws of the United States to be charged or tried in a more speedy manner; and (2) the right to be charged within the applicable statute of limitations period if the statute of limitations has expired.

Furthermore, if the defendant does not enter an acceptable plea, the government will move to continue the trial now set to allow the government adequate time to prepare. The defendant agrees not to contest such a continuance, and agrees that the resulting delay would be excludable time under 18 U.S.C. § 3161(h).

## XI.   MISCELLANEOUS

**A.   No Other Terms.** This agreement is the complete understanding between the parties, and no other promises have been made by the government to the defendant or to the attorney for the defendant. This agreement does not prevent any governmental agency from pursuing civil or administrative actions against the defendant or any property. Unless an exception to this paragraph is explicitly set forth elsewhere in this document, this agreement does not bind or obligate governmental entities other than that specified as the government in this agreement (i.e., the United States Attorney's Office for the District of Idaho). The government will bring the defendant's cooperation and pleas to the attention of other prosecuting authorities at the request of the defendant or defense counsel.

**B.   Plea Agreement Acceptance Deadline.** This plea offer is explicitly conditioned on the defendant's notification of acceptance of this agreement no later than 5:00 p.m. on May 11, 2018.

## XII.   UNITED STATES' APPROVAL

I have reviewed this matter and the agreement. This agreement constitutes a formal plea offer from the government. Any oral discussions with the defendant and defense counsel about a plea do not constitute a plea offer. Any written offer or agreement made before this agreement is no longer a valid offer by the government and is rescinded. I agree on behalf of the United States that the terms and conditions set forth above are appropriate and are in the best interests of justice.

BART M. DAVIS
UNITED STATES ATTORNEY
By:

_____          5.23.18
JUSTIN D. WHATCOTT                        Date
Assistant U.S. Attorney

## XIII.   ACCEPTANCE BY DEFENDANT AND COUNSEL

I have read and carefully reviewed every part of this agreement with my attorney. I
understand the agreement and its effect upon my potential sentence. Furthermore, I have
discussed all of my rights with my attorney and I understand those rights. No other promises or
inducements have been made to me, directly or indirectly, by any agent of the government,
including any Assistant United States Attorney, concerning the plea to be entered in this case. I
understand that this agreement constitutes a formal plea offer from the government. Any oral
discussions between the government and me or my counsel about a plea do not constitute a plea
offer. Any written offer or agreement made before this agreement is no longer a valid offer by the
government and is rescinded. In addition, no one has threatened or coerced me to do, or to refrain
from doing, anything in connection with this case, including enter a guilty plea. I understand that,
if I am not a citizen or naturalized citizen of the United States, by pleading guilty in this case it is
virtually certain that I will be removed from the United States. I am satisfied with my attorney's
advice and representation in this case.

_Jose Luis Sanchez_                    _5-9-18_
                                        Date
JOSE LUIS SANCHEZ
Defendant

I have read this agreement and have discussed the contents of the agreement with my client. The agreement accurately sets forth the entirety of the agreement. I have conveyed all written offers from the government to the defendant pursuant to *Missouri v. Frye*, 132 S. Ct. 1399, 1408-09 (2012). I understand that this agreement constitutes a formal plea offer from the government. Any oral discussions between the government and me or my client about a plea do not constitute a plea offer. Any written offer or agreement made before this agreement is no longer a valid offer by the government and is rescinded. I have discussed with my client the fact that if my client is not a citizen or naturalized citizen of the United States, by pleading guilty in this case, it is virtually certain that my client will be removed from the United States. I concur in my client's decision to plead guilty as set forth above.

                                        _5-9-18_
                                        Date
GERALD BUBLITZ
Attorney for the defendant